UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FIRST IMPRESSIONS SALON, INC., *et al.*,<br><br>            Plaintiffs,<br>v.<br><br>NATIONAL MILK PRODUCERS FEDERATION, *et al.*,<br><br>            Defendants. | Case No: 3:13-cv-00454 (NJR)(SCW) |

## MEMORANDUM IN SUPPORT OF CLASS COUNSEL'S
## MOTION FOR ENTRY OF A SET-ASIDE ORDER

COMES NOW Co-Lead Class Counsel for Plaintiffs ("Class Counsel"), and respectfully submits this Memorandum of Law in Support of Class Counsel's Motion for Entry of a Set-Aside Order, as follows:

### INTRODUCTION

Class Counsel respectfully requests that the Court enter an order that provides a mechanism for Class Counsel to seek compensation for work performed and costs incurred in this litigation that has benefited all purchasers of butter and cheese ("Class Members"). Specifically, Class Counsel requests an order that: 1) establishes "set-asides" from any settlement or judgment involving the claims in this litigation and any class-members who have opted out of this class action ("Opt-Out Plaintiffs"); and, 2) requires Defendants to notify Class Counsel in the event of any such settlement or judgment.

When faced with similar circumstances, courts across the country have entered set-aside orders, like that requested here, so that all counsel who have conferred a common benefit may apply for fair compensation for their work and expenditures. Class Counsel believes the entry of

such a set-aside order will promote efficiency and avoid ambiguity, and therefore requests that the Court enter an order requiring a percentage of any settlement or judgment obtained by an Opt-Out Plaintiff be withheld by Defendants and deposited into an escrow account. Payments from the account to compensate Class Counsel for common benefit work will be subject to Court approval after a showing by Class Counsel that specifies the benefits conferred, legal work performed, and costs incurred by Class Counsel. Further, Class Counsel requests that the Court's order requires Defendants to notify Class Counsel in the event of any such settlement or judgment to ensure Class Counsel has knowledge of all applicable recoveries by Opt-Out Plaintiffs.

## **RELEVANT BACKGROUND**

On May 5, 2013, Plaintiffs filed a class action complaint against Defendants based on Defendants' engagement in a price-fixing conspiracy that increased the price of raw milk and manufactured dairy products through premature "herd retirements." (Dkt. Nos 1-4). Since then, Class Counsel's hard work in bringing the litigation to its current posture has benefitted all litigants in the case. First, Class Counsel successfully responded to Defendants' motions to dismiss. (Dkt. No. 250). While the motions to dismiss were pending, Class Counsel spent time and resources organizing and negotiating several procedural orders – including, *inter alia*, the ESI Discovery Protocol and Protective Order (Dkt. Nos. 126, 127), the Stipulated Order Regarding Plaintiffs' Class Certification Expert (Dkt. No. 232), and several scheduling orders (Dkt. Nos. 110, 149, 179, 212, 215, 241, 309, 366). Likewise, Class Counsel participated in regular status conferences and hearings before Magistrate Judge Stephen C. Williams and U.S. District Judge Nancy J. Rosenstengel. (*See, e.g.*, Dkt. Nos. 94, 132, 145, 161, 178, 224, 230, 239, 283, 287, 320, 363, 365).

Class Counsel has also extensively participated in discovery. For example, Class Counsel drafted document requests to Defendants; prepared requests for admissions providing for critical

concessions; held extensive negotiations with Defendants as to appropriate search terms and custodians; and reviewed productions of documents central to formulating the operative Third Amended Consolidated Class Action Complaint. Defendants asserted objections to discovery requests at nearly every turn; therefore, Class Counsel participated in several meet-and-confers between with Defendants on a wide-range of discovery issues, and, where necessary, litigated crucial discovery disputes before Magistrate Judge Williams. (*See e.g.*, Dkt. Nos. 306, 308, 315, 317, 332). Additionally, Class Counsel has taken and defended numerous depositions at this juncture.

During this time, several related cases were consolidated with this action. (Dkt. Nos. 82, 100, 171). With the addition of each new case, Class Counsel crafted and filed amended consolidated complaints, including the operative Third Amended Consolidated Class Action Complaint. (Dkt. Nos. 57, 102, 182). Further, Class Counsel conducted substantial briefing on class certification. (Dkt. Nos. 3, 4, 58, 133, 134, 220, 221, 244, 245, 261, 289, 290). These efforts ultimately proved successful when the Court certified a class of Buyers that consists of two subclasses: 1) All persons and entities in the United States that purchased butter directly from one or more of Defendants during the period from December 6, 2008 to July 31, 2013; and 2) All persons and entities in the United States that purchased cheese directly from one or more of Defendants during the period from December 6, 2008 to July 31, 2013. (Dkt. No. 291). And, on December 8, 2017, the Court entered an Order that appointed John (Don) Barrett, Dianne Nast, and Michael Roberts as Co-Lead Class Counsel in this litigation. (Dkt. No. 301).

In short, all Class Members have benefitted and will continue to benefit from Class Counsel's vigorous prosecution of this matter. Although a few entities have elected to opt-out of the class and may pursue their claims against Defendants independently by either entering into

settlement negotiations or filing their own lawsuits, that does not diminish the value of any work Class Counsel performed to their benefit. Unlike many antitrust cases, there was no prior Department of Justice action or government proceeding regarding the claims in this action for Plaintiffs to seek and gain information and documents from. In fact, but for Class Counsel's thorough investigation into this price-fixing conspiracy and hard work in litigating the case thus far, Opt-Out Plaintiffs would not have the information necessary to file their own independent lawsuits or to settle their claims with Defendants.

## ARGUMENT

Class Counsel have led the way on every front of this litigation, and have spent significant time and resources in investigating, initiating, and bringing this lawsuit. This includes defeating Defendants' motions to dismiss, conducting extensive written discovery and related motion practice, and successfully preparing and arguing class certification motions. Now that a class has been certified in this litigation, Class Members are certainly within their rights to elect to opt out and seek recovery outside of the class mechanism. However, such Opt-Out Plaintiffs should not be permitted to reap the benefits from Class Counsel's work over the past five years without providing reasonable compensation for such. To allow this would permit Opt-Out Plaintiffs to rely on the hard work of others and benefit from this litigation, yet avoid sharing in the full burden and expense of same.

## I. THE COURT SHOULD ENTER A SET-ASIDE ORDER.

### A. The Court Has Discretion to Set Aside Funds to Compensate Class Counsel for Common Benefit Work

A federal court's "inherent powers of equity" provide the "'foundation for the historic practice of granting reimbursement for the costs of litigation'" and allow the court to ensure "'justice as between a party and the beneficiaries of his litigation.'" *In re Air Crash Disaster at*

*Florida Everglades on December 29, 1972*, 549 F.2d 1006, 1018 (5th Cir. 1977) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166-67 (1939)). In class actions, a court's authority to ensure compensation to attorneys that perform work for the administration of the case and that provides a common benefit to all plaintiffs is derived from the Supreme Court's common benefit doctrine. The common benefit doctrine "reflects the traditional practice in courts of equity" and "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Put another way, the doctrine avoids the problem of free-riding, where "individuals who benefit from the litigation avoid sharing the full burden and expense of litigation by relying on the work of others." *Turner v. Murphy Oil USA, Inc.*, 422 F. Supp. 2d 676, 680 (E.D. La. 2006). Thus, "[a] necessary corollary to court appointment of lead and liaison counsel and appropriate management committees is the power to assure that these attorneys receive reasonable compensation for their work." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 653 (E.D. Pa. 2003).

Courts across the country have invoked the common benefit doctrine and recognized that where lead counsel's work on behalf of a group of plaintiffs confers a benefit on others, a portion of the attorneys' fees the beneficiaries pay should be allocated to lead counsel.[1] "[F]oreclosing those recoveries as a source of funding for the common benefit work would enrich the non-contributing individual plaintiffs unjustly at the expense of … the lead counsel." *In re Zyprexa*

---

[1] *See, e.g.*, *In re Genetically Modified Rice Litig.*, No. 4:06 MD 1811 CDP ALL, 2010 U.S. Dist. LEXIS 19168 (E.D. Mo. Feb. 24, 2010); *In re MGM Grand Hotel Fire Litig.*, 660 F.Supp. 522 (D. Nev. 1987); *In re Diet Drugs Prod. Liab. Litig.*, MDL No. 1203, 1999 U.S. Dist. LEXIS 1797, (E.D. Pa. Feb. 10, 1999); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, MDL No. 1014, 1996 U.S. Dist. LEXIS 23300 (E.D. Pa. Jun. 17, 1996); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2017 U.S. Dist. LEXIS 129357 (N.D. Cal. Aug. 14, 2017); *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, No. M:05-cv-01699-CRB, 2006 U.S. Dist. LEXIS 10902 (N.D. Cal. Feb. 27, 2006); *In re Protegen Sling & Vesica Sys. Prods. Liab. Litig.*, Nos. 1:01-01387, 1387, 2002 U.S. Dist. LEXIS 26861 (D. Md. Apr. 12, 2002); *Linerboard*, 292 F. Supp. 2d at 668.

*Prods. Liab. Litig.*, 594 F.3d 113, 130 (2nd Cir. 2010) (Kaplan, J., concurring).

Thus, courts overseeing class actions or other multidistrict cases have applied the common benefit doctrine to require opt-out plaintiffs to compensate plaintiffs' management committees or designated lead counsel for work produced for the class. And, to ensure the availability of funds to equitably compensate lead counsel, courts have directed defendants to sequester and place into an escrow account a portion of the recoveries obtained by those individual Opt-Out Plaintiffs. As one court explained, "[i]n accordance with the common benefit doctrine, it has been a common practice in the federal courts to impose set-asides in the early stages of complex litigation in order to preserve common-benefit funds for later distribution." *Turner*, 422 F. Supp. 2d at 680.

The principles of equity and judicial efficiency, as well as nearly a century's worth of jurisprudence, show that it is entirely within the Court's authority to enter a set-aside order that compensates Class Counsel for common benefit work performed. Thus, it is necessary that the Court enter such an order and establish a framework for Class Counsel to seek compensation for their work that benefits Opt-Out Plaintiffs.

B.    A Set-Aside Order is Appropriate in This Case

The record here presents a strong factual basis for a set-aside order, as Class Counsel have "done much to craft the case against defendants," and "[t]hat work has benefitted all litigants in the class action and [potential] tag-along actions." *Linerboard*, 292 F. Supp. 2d at 657. Class Counsel has conferred a substantial benefit to Opt-Out Plaintiffs through the management of this litigation over the past five years, and such attorney work product that is performed for the benefit of all plaintiffs is considered a common benefit. *See In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, No. 3:12-md-02385-DRH-SCW, 2012 U.S. Dist. LEXIS 162110, at *3-4 (S.D. Ill. Nov. 13, 2012) (finding that the definition of "common benefit work product" included "all work

performed for the benefit of all plaintiffs, including pre-trial matters, discovery, trial preparation, a potential settlement process, and all other work that advances [the] litigation to conclusion.").

Here, Class Counsel has substantially advanced the litigation on behalf of all Class Members. This case involves the interplay of multiple complex factual issues which Class Counsel has spent considerable time discovering, analyzing, and developing. Class Counsel has already formulated and filed a comprehensive consolidated complaint, litigated motions to dismiss, successfully argued motions for class certification, and extensively negotiated and litigated the scope of discovery. Any plaintiff who now decides to pursue claims independently is able to enjoy the benefits of, among other things, the efforts described *supra* at 2-4.

In addition, Opt-Out Plaintiffs will also reap the benefit of the litigation strategy Class Counsel has developed. As in *Linerboard*, Opt-Out Plaintiffs will necessarily obtain the benefit of the "*imprimatur*" of this Court on the theory espoused by Class Counsel, as well as the Court's favorable rulings on the class action motions since "many of the questions entering into determination of class action questions [are] intimately involved with the merits of the claim." *Linerboard*, 292 F. Supp. 2d at 659; *see also* Manual for Complex Litigation (Third) § 30.1 (1995) ("The decision on whether or not to certify a class, therefore, can be as important as decisions on the merits of the action and should be made only after consideration of all relevant evidence and arguments presented by the parties."). Any class member that opts out thus obtains the benefit of "the theory of the case formulated by class plaintiffs." *Linerboard*, 292 F. Supp. 2d at 659. The size of any Opt-Out Plaintiff's recovery will be directly tied to the strength of the case that Class Counsel has developed over the past five years. As such, Class Counsel has "made a sufficient showing to warrant establishment of a framework to ensure that funds will be available to compensate them should the Court later determine such compensation is warranted." *Id.* at 662.

Accordingly, Class Counsel requests the Court enter the proposed order submitted concurrently with this motion. The proposed order is substantially similar to the orders entered in *Linerboard*, *Bextra*, as well as numerous other cases, and includes the following key features:

1. In the event that an Opt-Out Plaintiff obtains a settlement or judgment in this matter, Defendants shall set aside and place into a "Milk Fee and Expense Account" 20% (or another percentage designated by the Court) of such settlement or judgement, with 15% deemed Class Counsel attorneys' fees to be withheld from the settling claimants' attorney fee and 5% deemed costs to be subtracted from the client portion of individual fee contracts;

2. The set-aside funds shall be available, at the Court's discretion, to compensate Class Counsel for their common benefit work, subject to a showing that Class Counsel is entitled to such payments;

3. Any other counsel for one or more Opt-Out Plaintiffs that believe they have performed compensable common benefit work shall also be permitted to apply to the Court for compensation from the set-aside funds; and,

4. Any set-aside funds not paid to Class Counsel or other counsel for common benefit work shall be remitted pro rata to the Opt-Out Plaintiffs from whose settlements or judgments the set-aside funds were withheld.

Class Counsel's proposal deploys the "preferable procedure" of having Defendants set aside funds before distribution to Opt-Out Plaintiffs rather than requiring Class Counsel to recover common benefit attorneys' fees and expenses from Opt-Out Plaintiffs directly. *Linerboard*, 292 F. Supp. 2d at 655. Class Counsel's proposed set-aside order also includes key features that will protect the interests of Opt-Out Plaintiffs. First, no payments will be made from the set-aside funds

8

unless and until approved by the Court. *Id.* at 669. Second, any set-aside funds not paid to Class Counsel for common benefit work will revert to Opt-Out Plaintiffs. *Id.* at 667.

The twenty percent (20%) sequestration percentage proposed by Class Counsel, with fifteen percent (15%) deemed Class Counsel attorneys' fees to be withheld from the settling claimants' attorney fee and five percent (5%) deemed costs to be subtracted from the client portion of individual fee contracts, is appropriate considering the amount of time, work, and resources that have been put into this litigation over the past five years. It bears emphasis that Class Counsel does ***not*** propose to ***automatically*** recover twenty percent of any opt-out settlement or judgment, but will instead make a showing and seek Court approval for payment of any portion of an opt-out recovery.

    **C.**    **Class Counsel's Motion Is Timely**

Although no settlements or judgements have occurred between Opt-Out Plaintiffs and Defendants to Class Counsel's knowledge, now is an appropriate time for the Court to establish a structure to ensure that Class Counsel may seek equitable compensation for their common benefit work.[2] The Manual for Complex Litigation explains that:

> Lead and liaison counsel may have been appointed by the court to perform functions necessary for the management of the case but not appropriately charged to their client. Early in the litigation, the court should … establish the arrangements for [Class Counsel's] compensation, including setting up a fund to which designated parties should contribute in specified proportions.

Manual for Complex Litigation (Fourth) § 14.215 (2004). Courts are likewise in agreement that a set-aside order may issue before any settlement or judgment. As the court in *Zyprexa* explained:

> Even if no common benefit compensation had yet been earned, there would be a need to put a holdback method into place promptly. Without the entry of a set-aside order in advance of individual action settlements or judgments, individual actions could be dismissed after a settlement or a judgment, requiring [Class Counsel] to pursue separate compensation claims in any number of jurisdictions around the

---

[2] To date, Kraft Foods Inc. and Sysco Corporation have elected to opt-out of the class.

9

country.

467 F. Supp. 2d at 266 (internal quotation omitted); *see also, e.g.*, *In re Lidoderm Antitrust Litig.*, 2017 U.S. Dist. LEXIS 129357, at *40-41 (finding that the litigation was "significantly advanced" enough for a set-aside order despite the fact that opt-out plaintiffs had not yet entered into settlement agreements or filed independent lawsuits); *Turner*, 422 F. Supp. 2d at 681 (finding that "the fact that there is no 'common fund' at this stage of the litigation is of no moment … The set-asides would be imposed to ensure that there will be adequate funds available if the plaintiffs are successful."); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970) (finding that "nothing … indicates that the suit must actually bring money into the court as a prerequisite to the court's power to order reimbursement of expenses."). Entry of a set-aside order now will avoid uncertainty and streamline the proceedings going forward.

**II. ANY SET-ASIDE ORDER SHOULD REQUIRE DEFENDANTS TO NOTIFY CLASS COUNSEL IN THE EVENT OF A SETTLEMENT OR JUDGMENT INVOVLING OPT-OUT PLAINTIFFS.**

It is necessary that any set-aside order entered in this litigation also requires Defendants to notify Class Counsel in the event that Opt-Out Plaintiffs receive any form of recovery from Defendants that arises out of, or is because of, the claims in this litigation. While it is possible for Class Counsel to confirm that Defendants are sequestering the appropriate funds from any settlements or judgments that occur after an Opt-Out Plaintiff files an independent lawsuit, the same cannot be said for any recoveries that are obtained by Opt-Out Plaintiffs without them ever filing suit. In the latter case, there is no means for Class Counsel to ever have knowledge of such a settlement, or whether or not Defendants set aside the appropriate funds to compensate Class Counsel for common benefit work. *See Lidoderm*, 2017 U.S. Dist. LEXIS 129357, at *41-42 (finding that a court order is necessary to ensure that plaintiffs have knowledge of settlements

reached between defendants and opt-outs). As such, it is necessary that any set-aside order entered by the Court also requires Defendants to notify Class Counsel if and when they are sued, if settlement discussions are commenced, or immediately upon payment by any Defendant to any Opt-Out Plaintiff in any way, direct or indirect, by cash or credit, as a settlement of or because of any claims in this action.

## CONCLUSION

Class Counsel have expended enormous resources in terms of time, effort, and money to bring this litigation to its present posture, and all entities and individuals within the class boundary have received the benefits of Class Counsel's efforts in this case. Equity requires, and jurisprudence supports the conclusion, that all Class Members, including Opt-Out Plaintiffs, must contribute to the reasonable fees and costs of Class Counsel. A set-aside order provides a means to ensure that Class Counsel are compensated for common benefit work and is appropriate, and necessary, in this litigation. For the foregoing reasons, Class Counsel requests that the Court enter an order that establishes the set-asides outlined herein to sequester funds from any settlements or judgments between any Defendant(s) and any Opt-Out Plaintiff(s) in order to compensate Class Counsel for common benefit work, and that requires Defendants to give notice to Class Counsel of any such settlements or judgments. Class Counsel also prays for any additional or alternate relief to which they may be entitled.

Dated: October 24, 2018.                                  Respectfully submitted,

BY: /s/ *Don Barrett*
John W. ("Don") Barrett (MSB#2063)
BARRETT LAW GROUP, P.A.
404 Court Square
Post Office Box 927
Lexington, Mississippi 39095
Telephone: (662) 834-2488
Facsimile: (662) 834-2628

        dbarrett@barrettlawgroup.com

        Dianne M. Nast
        NASTLAW LLC
        1101 Market Street
        Suite 2801
        Philadelphia, Pennsylvania 19107
        Telephone: (215) 923-9300
        Facsimile: (215) 923-9302
        Email: dnast@nastlaw.com

        Michael Roberts
        ROBERTS LAW FIRM, P.A.
        20 Rahling Circle
        Mailing Address: P.O. Box 241790
        Little Rock, Arkansas 72223
        Telephone: (501) 821-5575
        Facsimile: (501) 821-4474
        Email: mikeroberts@robertslawfirm.us

        *Co-Lead Class Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2018, the foregoing was electronically filed with the Clerk of Court via the CM/ECF filing system, which sent notification of such filing to all counsel of record.

>      */s/ Don Barrett*
>      John W. ("Don") Barrett