UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FIRST IMPRESSIONS SALON, INC., *et al.*,<br><br>　　　　　　　　Plaintiffs,<br><br>　v.<br><br>NATIONAL MILK PRODUCERS FEDERATION, *et al.*,<br><br>　　　　　　　　Defendants. | Case No. 3:13-cv-00454 (NJR)(SCW) |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO STRIKE AMENDED RULE 26 DISCLOSURES**

**SUMMARY OF ARGUMENT**

　　Plaintiffs' Motion to Strike Defendant Agri-Mark, Inc.'s, Dairy Farmers of America, Inc.'s, and Land O'Lakes, Inc.'s Amended Rule 26(a)(1) Disclosures seeks to prevent Defendants' farmer witnesses from testifying at trial, on the basis of discovery prejudice, even though trial is nearly a year away and Defendants have offered to make their farmer witnesses available for depositions before trial.  If granted, Plaintiffs' motion would exclude defense witnesses from the trial of a multibillion-dollar, treble-damages antitrust lawsuit, for no good reason.  The "prejudice" Plaintiffs complain of consists solely of the risk that Plaintiffs may be surprised by the testimony of these witnesses if Plaintiffs are unable to take their depositions before trial.  Defendants' offer to allow depositions of their farmer witnesses in advance of trial would fully resolve Plaintiffs' concerns, yet Plaintiffs rejected that offer with no explanation and no counter-proposal.  Ex. A.  In light of that, it is clear that Plaintiffs' motion—not the disclosures the Plaintiffs seek to strike—is gamesmanship and should be denied.

I. **BACKGROUND**

Defendants include three dairy cooperatives whose members and former members funded the herd retirement program ("HRP"), participated in the dairy industry throughout the HRP, and in some cases exited the dairy industry through the HRP. Defendants have long anticipated calling farmer witnesses and each cooperative Defendant identified farmers as witnesses in their initial disclosures made November 12, 2014. Ex. B at 2-4 (Land O' Lakes disclosures identifying three farmer board members, as well as "Dairy farmer participants in the CWT program"); Ex. C at 1-3 (Agri-Mark disclosures identifying farmer board member and incorporating co-defendants' disclosures by reference); Ex. D at 3 (DFA disclosures incorporating co-defendants' disclosures by reference and identifying "current or former members of the DFA Board of Directors, including but not limited to Randy Mooney and Wayne Palla").

Each of the cooperative Defendants has produced records and board minutes to Plaintiffs that identify all of the dairy farmers who compromise their membership and board members during the relevant time period. On December 3, 2014, Defendant NMPF produced spreadsheets listing farmers who successfully bid for buyouts in the HRP. On February 3, 2015, in response to Plaintiffs' First Set of Interrogatories to all Defendants, Defendant Land O'Lakes identified its records to Plaintiffs by referring to Bates numbers of produced documents. Land O'Lakes also identified the specific Bates numbers of the lists produced by NMPF identifying the farmers that participated in the HRP. Similarly, on March 25, 2015, in response to the same interrogatory, Defendant Agri-Mark identified by Bates number lists of its members and "stop orders" containing information about its members who ceased production under the HRP. Agri-Mark's response also referred Plaintiffs to the files of Defendant NMPF for information relating to the participants in the HRP. On April 6, 2015, in response to Plaintiffs' Second Interrogatories to All Defendants, Defendant NMPF identified again by Bates number the lists of farmers that participated in the HRP. Plaintiffs did not make any further requests of Defendants aimed at identifying categories of farmers (*e.g.,* those who expanded during the HRP, those who expressed opposition to the HRP

2

in cooperative proceedings) from whom Plaintiffs might request depositions or document discovery.

The cooperative Defendants worked diligently to identify the specific farmers they may call as trial witnesses. This was a significant project, requiring some or all of the following steps, depending on the farmer: (1) work by counsel and client personnel to identify potential witnesses based on criteria developed by counsel; (2) calls and visits from field representatives to determine each farmer's willingness to be interviewed by counsel; (3) one or more rounds of telephone interviews by counsel; and (4) in-person interviews by counsel. Scheduling calls and visits took time, because dairy farmers work long hours, seven days a week, and many of them live in remote locations far from the nearest airport. One challenge Defendants faced, especially with respect to retired farmers, was the advanced age of many potential witnesses, some of whom have died. By September 2018, Defendant Land O' Lakes had identified a group of potential witnesses from among its former members who exited through the HRP and disclosed them to Plaintiffs in supplemental disclosures on September 21, 2018. Ex. E.

Land O' Lakes and Agri-Mark also worked to identify an additional group of farmers who remained in business throughout HRP and, therefore could present evidence at trial from a different perspective than the farmers who exited through HRP. That required all the same steps as described above. Counsel for Land O' Lakes conducted their last farmer interview on December 3, visiting with a Minnesota farmer who had been disclosed to Plaintiffs on November 30 on the basis of prior telephone interviews. Meanwhile, the other cooperative Defendants identified additional farmer witnesses by holding meetings with staff and farmer leaders to identify potential farmer witnesses, and then conducting interviews with the identified witnesses.

As they neared completion of this process, defense counsel determined the group of farmers who could be trial witnesses. Although the cooperative Defendants had previously identified farmer members, and farmer board members, as potential witnesses and produced documents sufficient to identify all of them, out of an abundance of caution, and to avoid being accused of sandbagging upon disclosing their trial witness list due at the final pre-trial conference

tentatively set for September 18, 2019, the cooperative Defendants prepared amended and supplemental disclosures naming the farmer witnesses they may call at trial. Those disclosures were served on November 5, November 29, and November 30 by DFA, Agri-Mark, and Land O' Lakes, respectively. Exs. F, G, H.[1] Although DFA's amended disclosures were made weeks before the November 30, 2018 discovery deadline, Plaintiffs did not request depositions of any of the farmers identified in those disclosures, nor did Plaintiffs request the depositions of any of the farmers disclosed in Land O' Lakes' supplemental disclosures made on September 21, 2018.[2]

Defendants anticipated that Plaintiffs might request the depositions of the farmers named in their latest disclosures and, to that end, counsel met and conferred by telephone on December 5, after Plaintiffs filed this motion. Defendants proposed to identify their farmer trial witnesses (a group that will include some, but likely not all, of the 17 farmers identified in the challenged disclosures) a reasonable time in advance of trial and make them available for depositions at that time. Defense counsel suggested these depositions might occur 2-3 months in advance of trial but that the timing was open for discussion. The idea was to prevent surprise to Plaintiffs at trial, but also spare the farmers from depositions that might prove unnecessary if the case settled or was postponed between discovery and trial.[3] Defendants proposed to cooperate in seeking the Court's approval to conduct these depositions after the discovery deadline. Plaintiffs' counsel on the call said he would discuss the proposal with co-counsel and respond promptly. On December 10,

---

[1] Defendant Agri-Mark also amended its initial disclosures by naming an additional employee who became Vice President of Membership after the employee named in Agri-Mark's initial disclosures dated November 12, 2014 retired in 2018. Ex. C. Agri-Mark also amended its disclosures with two additional public officials whose names were equally available to Plaintiffs. Plaintiffs' motion to exclude those witnesses should be denied for the reasons discussed in Section II(E), *infra*.

[2] Plaintiffs do not challenge the September 21, 2018 Land O' Lakes disclosures in this motion.

[3] Three non-farmer witnesses whom Plaintiffs challenge were excluded from Defendants' offer. These include Senator Patrick Leahy and Erik Rasmussen, a former USDA milk market administrator, who are not affiliated with Defendants and whom Defendants cannot make available for depositions. (Defendants would not object to the depositions of Senator Leahy or Mr. Rasmussen if Plaintiffs can arrange their appearance.) Defendant Agri-Mark excluded Scott Werme because, as discussed in Section II.E., Agri-Mark identified Mr. Werme's predecessor in its initial disclosures and Plaintiffs have known about Mr. Werme since at least August 30, 2018.

Plaintiff's counsel rejected the proposal in a one-line email with no explanation and no counter-proposal. Thus, Defendants file this response in opposition to Plaintiffs' motion.

## II. ARGUMENT

### A. Governing Law

Rule 26(a)(1)(A)(i) requires only the disclosure of witnesses having discoverable information "that the disclosing party may use to support its claims or defenses." A party need only amend its Rule 26(a) disclosures where "additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e); *see Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 732-733 (7th Cir. 2004). Plaintiffs' motion is based on Fed. R. Civ. P. 37(c)(1), which provides that if a party fails to make a timely disclosure, the court may prohibit the party from using the late-disclosed information or witness at trial, unless the late disclosure "was substantially justified or is harmless." In determining whether a late disclosure was "substantially justified" or "harmless," courts evaluate four factors. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). These are "'(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date.'" *Shirrell v. Billing*, No. 17-CV-0567-MJR-DGW, 2018 WL 2193822, at *1 (S.D. Ill. May 14, 2018) (quoting *Caterpillar.*, 324 F.3d at 857).

### B. The Challenged Disclosures Were Timely

Rule 26(a)(1)(A)(i) only requires the disclosure of witnesses having discoverable information ***"that the disclosing party may use to support its claims or defenses"*** (emphasis added). Thus, a party need not identify every witness it is aware of who may have discoverable information—only those witnesses whom the party may use to support its claims or defenses. That is a matter of judgment, and Rule 26 does not require disclosure of potential witnesses before

5

making the judgment that they may be used to support a party's case. As discussed, Defendants' identification of potential farmer witnesses for trial was a lengthy process only recently completed. While that process was underway, and soon after its completion, Defendants made amended and supplemental disclosures as they determined which farmer members they might call at trial. Because the challenged disclosures were made promptly after counsel's determination that the witnesses at issue might have discoverable information Defendants might use to support their defenses, the disclosures were timely under Rule 26. Thus, there is no basis for a Rule 37 motion.

### C. To the Extent Defendants' Farmer-Witness Disclosures Were Late, the Timing Was Both Substantially Justified and Harmless

Even if the challenged disclosures were untimely, due to being made shortly before the discovery deadline, the timing of the disclosures was substantially justified because the process of identifying these witnesses took a long time and Defendants identified their witnesses promptly upon completing the process. *Cf. U.S. Sec. & Exch. Comm'n v. Berrettini,* No. 10-CV-1614, 2015 WL 5159746, at *2 (N.D. Ill. Sept. 1, 2015) (four-year delay in disclosing documents was not "justified"). The timing was also harmless. Plaintiffs have suffered no surprise, as Defendants disclosed farmers in general, and several farmers in particular, long ago. Moreover, all possible harm to Plaintiffs from the timing of the challenged disclosures can be resolved by Defendants' proposal to let Plaintiffs depose their farmer witnesses in advance of trial. *See Shirrell*, 2018 WL 2193822, at *1 (disclosure was harmless where the moving party had 1) notice of the potential witness, 2) nothing suggested bad faith or willfulness as the information was disclosed when it was discovered, and 3) the witness "w[ould] be available for a deposition before trial, providing an opportunity to cure any surprise or potential for prejudice"). Therefore, the timing of the challenged disclosures was harmless to Plaintiffs and the motion should be denied. *Id.; Doe v. Freeburg Cmty. Consol. Sch. Dist. No. 70,* No. 10-CV-458-JPG, 2012 WL 4006339, at *2 (S.D. Ill. Sept. 12, 2012) (late disclosure harmless where parties seeking to strike "have not explained

6

how knowing the subject of [the untimely disclosed witness] testimony earlier would have caused them to change their defense strategy or to seek new or different expert witnesses").

The cases Plaintiffs cite in support of their motion are very different from the situation here. For example, in *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 214 (N.D. Ill. 2013) the court excluded an untimely-disclosed accountant because the defendants previously made a "false assertion that they did not consult an accountant in relation [to the issues in the case]," the plaintiff conducted discovery in reliance on that assertion, and it would have caused "extreme prejudice" to the plaintiffs if the accountant were allowed to testify at trial. In *In re FedEx Ground Package System, Inc., Employment Practices Litigation*, No. 3:05-MD-527 RM, 2007 WL 2128164, at *5 (N.D. Ind. July 23, 2007), the defendants disclosed "hundreds of witnesses" six months after the close of discovery, making it impossible to re-open discovery without "unreasonably delay[ing] the resolution of class certification as well as the filing of dispositive motions." And in *Schargordosky v. Lind,* No. 3:13-cv-437-NJR-DGW, 2016 U.S. Dist. LEXIS 77873, at *4 (S.D. Ill. June 15, 2016), the defendants waited until a year after discovery closed to name a fact witness who directly contradicted plaintiffs' case (by stating, in a prisoner civil-rights case, that the prisoner plaintiff had not been stabbed by another inmate but, in fact, stabbed himself in a bid to get a new cellmate) without providing any explanation for the delay.

Here, by contrast, Defendants disclosed a small number of potential trial witnesses on and shortly before the close of discovery, nearly a year in advance of the trial date, even though these dairy farmer participants had been disclosed as a general category more than three and a half years before the fact discovery deadline. There is no basis for concluding that Defendants misled Plaintiffs with respect to the witnesses at issue or acted in bad faith—to the contrary, Defendants disclosed years ago, in their first disclosures, that they might rely on farmer witnesses and have produced documents sufficient to identify all of their farmers. Thus, this case differs from Plaintiffs' cited cases in two key respects. *First,* there is no basis for suspecting bad-faith conduct by Defendants. *Second,* any prejudice to Plaintiffs resulting from the timing of the challenged

disclosures can be fully resolved by permitting Defendants to take the depositions of the farmer witnesses in advance of the trial.

### D. Plaintiffs Have Waived Their Objections to DFA's Disclosures

DFA made its latest disclosures, which Plaintiffs challenge, on November 5, 2018—25 days before the close of discovery and 21 days before the Court held a hearing on November 26, 2018, to resolve remaining discovery disputes. *See* ECF No. 390 at 1. Plaintiffs easily could have requested depositions of DFA's witnesses disclosed November 5 within the discovery deadline or, at minimum, could have raised the issue with the Court on November 26 and requested an extension of discovery in order to take their depositions. Having failed to do so, Plaintiffs cannot now move to strike DFA's disclosures and bar those witnesses from trial.

### E. Plaintiffs' Motion Should Be Denied with Respect to Witnesses Werme, Leahy, and Rasmussen.

Besides farmer witnesses, Plaintiffs challenge Agri-Mark's disclosure of three non-farmer witnesses: Scott Werme, Agri-Mark's current Vice President of Membership, Senator Patrick Leahy, and Erik Rasmussen, a former USDA milk market administrator. Mr. Werme succeeded Robert Stoddart as Agri-Mark's Vice President of Membership after Mr. Stoddart retired in 2018. Agri-Mark disclosed Mr. Stoddart as a witness in Agri-Mark's first disclosures. Plaintiffs did not seek to depose Mr. Stoddart during the fact discovery period and instead listed Agri-Mark's membership as a matter for examination for Plaintiffs' Rule 30(b)(6) deposition of Agri-Mark's corporate representative. The fact that Mr. Werme had succeeded Mr. Stoddart was disclosed to Plaintiffs in the August 30, 2018, deposition of Agri-Mark's corporate representative, Richard Stammer. Ex. I at 135:21-24 ("Q: In 2003, who was your membership person? A: Bob Stoddart. Q: Who is your membership person today? A: Scott Werme."). Thus, Plaintiffs cannot claim surprise or untimeliness with respect to the addition of Mr. Werme to Agri-Mark's amended disclosures.

Moreover, the Court has already denied Plaintiffs' request to take a second Rule 30(b)(6) deposition regarding Agri-Mark's membership. *See* ECF No. 390 at 3. Deposing Mr. Werme would be an end-run around that order.

Senator Patrick Leahy and Erik Rasmussen, a former USDA Market Administrator, are public officials equally identifiable by Plaintiffs. Agri-Mark identified Senator Leahy in part because of Plaintiffs' deposition questioning of Robert Wellington, Agri-Mark's Vice President of Economics and Legislative Affairs. Ex. J at 157:18-158:5, 234:16-235:5, 240:19-24, 244:20-23, 266:10-19. Thus, Plaintiffs knew about Senator Leahy as a potential witness at least since August 22, 2018. Moreover, Land O'Lakes' initial disclosures (incorporated into Agri-Mark's) listed "[g]overnment officials responsible for administration of milk regulations"—a category applicable to Senator Leahy given his membership on the Senate Agriculture Committee. Ex. B at 3. Agri-Mark identified Mr. Rasmussen for his subject matter knowledge of the Federal Milk Marketing Order during the relevant time period. Again, co-defendant Land O'Lakes identified "[a]dministrators of milk marketing agencies" in its initial disclosures, which clearly applies to Mr. Rasmussen. *Id.* These two witnesses are equally available to Plaintiffs as they are to Defendants and Defendants would not object to Plaintiffs taking their depositions, if Plaintiffs could arrange their appearance. Based on the foregoing, Agri-Mark's identification of Mr. Werme, Senator Leahy, and Mr. Rasmussen was timely or, at the very least, substantially justified and harmless.

### F. Excluding The Challenged Witnesses Would Prejudice Defendants

Excluding the challenged witnesses—in particular, Defendants' farmer members—would result in severe and completely unjustified prejudice to Defendants. Plaintiffs undoubtedly will tell the jury a story of "corporate greed," casting the defendant cooperatives as soulless corporations scheming to raise prices at the expense of individual consumers. Defendants, in fact, are organizations of farmers and are entirely owned and controlled by farmers. Defendants must

be allowed to present their farmer members to the jury, both to explain what a cooperative is and how it works and to explain the HRP from the farmer's perspective. Among other things, the farmers may testify to (1) how the HRP worked at the farm level; (2) whether and why they and their neighbors supported it; (3) what they expected from the HRP and whether those expectations were fulfilled; (4) whether the farmers who took buyouts during HRP were "forced out" or chose to bid for buyouts; and (5) with respect to farmers who did not bid for buyouts, why not and how they managed their business during the HRP period. Their testimony may bear on key issues such as whether the HRP was an agreement to restrain supply and what impact—if any—it had on milk production.

These witnesses cannot fairly be excluded from trial based solely on the date of their disclosure to Plaintiffs. *See McCann v. Cullinan*, No. 11 CV 50125, 2015 WL 4254226, at *16 (N.D. Ill. July 14, 2015) ("[T]he Court must also be mindful that justice is best served by resolving cases on their merits.") (citing *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 759 (7th Cir. 2004)); *see also Beauchamp v. City of Dixon*, No. 11 CV 50121, 2014 WL 901437, at *7 (N.D. Ill. Mar. 7, 2014) ("[H]eeding the Seventh Circuit's admonitions that justice is served by deciding cases on the merits . . . the Court finds that this case has not proceeded to the point where [plaintiff] can no longer cure any prejudice to the defendants," and therefore opening discovery to allow additional depositions), *report and recommendation adopted sub nom. Beauchamp v. City of Dixon, Ill.*, No. 11 C 50121, 2014 WL 1315403 (N.D. Ill. Mar. 31, 2014).

Indeed, viewing the prejudice Defendants would suffer from the exclusion of these witnesses in light of Plaintiffs' unexplained rejection of Defendants' proposal to allow depositions of their farmer witnesses in advance of trial could reasonably lead the Court to conclude that it is Plaintiffs—not Defendants—who are guilty of gamesmanship.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Strike should be denied.

DATED: December 17, 2018                   Respectfully submitted,

By: /s/ *Nathan P. Eimer*
Nathan P. Eimer
Email: neimer@eimerstahl.com
Scott C. Solberg
Email: ssolberg@eimerstahl.com
Benjamin E. Waldin
Email: bwaldin@eimerstahl.com
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Fax: (312) 692-1718

Bart C. Sullivan, Esq.
Email: bsullivan@foxgalvin.com
John E. Galvin, Esq.
Email: jgalvin@foxgalvin.com
FOX GALVIN LLC
One South Memorial Drive, 12th Floor
St. Louis, MO 63102
Telephone: (314) 588-7000
Fax: (314) 588-1965

*Attorneys for Defendant Land O'Lakes, Inc.*


By: /s/ *W. Todd Miller* (with consent)
W. Todd Miller (admitted *pro hac vice*)
Email: tmiller@bakerandmiller.com
Lucy S. Clippinger (admitted *pro hac vice*)
Email: lclippinger@bakerandmiller.com
Ishai Mooreville (admitted *pro hac vice*)
Email: imooreville@bakerandmiller.com
BAKER & MILLER PLLC
2401 Pennsylvania Avenue, N.W.
Suite 300
Washington, DC 20037
Telephone: (202) 663-7820
Fax: (202) 663-7849

Christopher W. Byron
Email: cwb@bcpklaw.com
Byron Carlson Petri & Kalb, LLC
411 St. Louis Street
Edwardsville, IL 62025

Telephone: (618) 655-0600
Fax: (618) 655-4004

*Attorneys for Defendants Dairy Farmers of America, Inc.*


By: /s/ *Jill M. O'Toole* (with consent)
Jill M. O'Toole (admitted *pro hac vice*)
Email: jotoole@goodwin.com
Diane C. Polletta (admitted *pro hac vice*)
Email: dpolletta@goodwin.com
SHIPMAN & GOODWIN LLP
One Constitution Plaza
Hartford, CT 06103
Telephone: (860) 251-5000
Fax: (860) 251-5218

*Attorneys for Defendant Agri-Mark, Inc.*


## CERTIFICATE OF SERVICE

I certify that on December 17, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this case.

/s/ *Nathan P. Eimer*