## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| FIRST IMPRESSIONS SALON, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL MILK PRODUCERS FEDERATION, *et al.*, <br><br> Defendants. | Case No. 3:13-cv-00454 (NJR)(GCS) <br><br> CLASS ACTION |

## SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered into on November 22, 2019 by and between Defendant National Milk Producers Federation and Plaintiffs First Impressions Salon, Inc., Roy Mattson, Piggly Wiggly Midwest, LLC and KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc., for themselves individually and on behalf of all Class Members. This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims, upon and subject to the terms and conditions herein, subject to Court approval.

## I.      DEFINITIONS

1.      As used in this Settlement Agreement, the following capitalized terms have the meanings specified below:

2.      "Action" means the action known as *First Impressions Salon, Inc., et al. v. National Milk Producers Federation, et al.*, 3:13-cv-00454-NJR-GCS (S.D. Ill.).

1

3.      "Agreement" means this Settlement Agreement, together with any exhibits attached hereto, which are incorporated by reference.

4.      "Claim" means any and all manner of claims, causes of action, cross-claims, counterclaims, suits, demands, actions, rights, charges, liabilities, losses, obligations, and controversies of any kind, nature, or description whatsoever, whether known or unknown, accrued or unaccrued, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, direct or derivative, including "Unknown Claims," whether class, individual, representative, or otherwise in nature, whether arising in law or equity or under any statute, regulation, ordinance, contract, or otherwise, for damages, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, or other payment of money, whenever incurred, or for injunctive, declaratory, or other equitable relief.

5.      "Class" shall have the meaning as certified by the Court in its Order dated September 29, 2017 (ECF 291 Sealed) as follows:

> All persons and entities in the United States that purchased butter directly from one or more Members of Defendant, Cooperatives Working Together, and/or their subsidiaries during the period from December 6, 2008 to July 31, 2013 who did not timely opt-out of the Class pursuant to the Class Notice approved by the Court in its order dated May 8, 2018 and transmitted to the Class on May 31, 2018 (hereinafter referred to as "Butter Sub-Class");

> and

> All persons and entities in the United States that purchased cheese directly from one or more Members of Defendant,

Cooperatives Working Together, and/or their subsidiaries during the period from December 6, 2008 to July 31, 2013 who did not timely opt-out of the Class pursuant to the Class Notice approved by the Court in its order dated May 8, 2018 and transmitted to the Class on May 31, 2018 (hereinafter referred to as "Cheese Sub-Class").

6.  "Class Member" means each member of the Class.

7.  "Co-Lead Class Counsel" means the Court-appointed interim Co-Lead Class Counsel for Plaintiffs and the Class, namely, (i) Michael L. Roberts, Roberts Law Firm P.A.; (ii) Don Barrett, Barrett Law Group, P.A.; and (iii) Dianne M. Nast, Nastlaw, LLC.

8.  "Class Counsel" means Co-Lead Class Counsel plus other firms appearing under the direction and supervision of Co-Lead Counsel in this matter.

9.  "Conduct" means any alleged conduct, acts, transactions, policies, practices, events, communications, occurrences, statements, omissions or failures to act.

10. "Court" means the United States District Court for the Southern District of Illinois.

11. "CWT" means Cooperatives Working Together.

12. "Dairy Products" means cheese and butter sold, distributed, or provided by Defendants and any other members of CWT to Class Members.

13. "Deadline for Filing Appeal from Final Judgment and Order of Dismissal" means the latest day on which appeals from the Court's Final Judgment and Order of Dismissal may be filed.

14.     "Defendants" means Agri-Mark, Inc., Dairy Farmers of America, Inc., Land O'Lakes, Inc., and National Milk Producers Federation a/k/a Cooperatives Working Together, the defendants in this Action.

15.     "Effective Date of Settlement" means the first business day following the date the Final Judgment and Order of Dismissal has become final and unappealable, either because: (i) the prescribed time for commencing any appeal has expired and no appeal has been filed; or (ii) an appeal has been filed and either (1) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (2) the order has been affirmed in its entirety or remanded to the Court, which has entered a further Final Judgment and Order of Dismissal, and the prescribed time, if any, for commencing any further appeal has expired. For purposes of this Section, an appeal includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and any other proceedings of like kind whether by affirmance on or exhaustion of any possible appeal or review, writ of certiorari, lapse of time, or otherwise. The finality of the Final Judgment and Order of Dismissal shall not be affected by any appeal or other proceeding regarding solely an application for attorneys' fees and expenses.

16.     "Escrow Agent" means Epiq Class Action & Claims Solutions, Inc..

17.     "Escrow Bank" means Pinnacle Bank.

18.     "Execution Date" or "Settlement Date" means November 22, 2019.

4

19. "Fairness Hearing" means the hearing to be held by the Court to determine whether the settlement set forth in this Agreement shall receive final approval pursuant to Fed. R. Civ. P. 23.

20. "Fee and Expense Application" has the meaning given to it in Section VII.1.

21. "Final Judgment and Order of Dismissal" means the order of the Court that (i) contains all the provisions set forth in Section V.3, and (ii) finally approves the Settlement set forth in this Agreement and dismisses with prejudice the claims of Plaintiffs and all Class Members against Defendants.

22. "Herd Retirement Program" means the program where dairy producers, in the CWT, were invited to submit bids to agree to sell their milking herds and cease milk production from those herds.

23. "Named Plaintiffs" means Plaintiffs First Impressions Salon, Inc., Roy Mattson, Piggly Wiggly Midwest, LLC and KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc.

24. "National Milk" shall mean National Milk Producers Federation and all committees, component parts and members thereof.

25. "Net Settlement Fund" means the amount of the Settlement Fund remaining after payment of: (a) all Court approved attorneys' fees to Class Counsel; (b) reimbursement of litigation expenses as approved by the Court; (c) payment of incentive awards to the Named Plaintiffs as awarded by the Court; (d) payment of the costs of notice; (e) payment of taxes in accordance with Section VIII below; and (f) payment of the costs of settlement administration.

5

26.   "Notice" means the notice required by Fed. R. Civ. P. 23(e) to be provided to the

Class in a manner acceptable to the Parties and approved by the Court.

27.   "Person" means any individual or entity.

28.   "Plaintiffs" means, individually and collectively, the Named Plaintiffs and the

Class.

29.   "Preliminary Approval Order" means an order of the Court that (i) contains all the

provisions set forth in Section V.1, and (ii) preliminarily approves the settlement

set forth in this Agreement and directs Notice thereof to the Class.

30.   "Released Claims" means any and all manner of Claims relating in any way to

Conduct that was alleged or could have been alleged in the Action based on the

same factual predicate as any or all of the factual predicates for the Claims alleged

in the Action, including, without limitation:

(i)    Any Conduct by Defendants or by the Released Parties (including any
       continuing effects of such conduct) relating to creation of, operation of, or
       participation in CWT or the Herd Retirement Program;

(ii)   Any claim involving, arising from, or relating in any way to any allegation
       that any Defendant or any Released Party engaged in any unlawful
       agreement, conspiracy, exclusionary conduct, restraint of trade,
       anticompetitive conduct, or similar unfair method of competition or unfair
       business practice that could or has been alleged to be or have been a
       violation of any federal or state law.

31.   The term "Released Claims" also means any claim that any Class Member has

asserted, could have asserted, or could assert against Defendants in the Action,

including any Claims that arise out of or relate to any acts, omissions,

nondisclosures,   facts,   or   occurrences   (including   any   oral   or   written

6

representations) in connection with the prosecution, defense, or settlement of the Action or the implementation of this Agreement, including without limitation: (i) the provision of Notice, (ii) the amount distributed to Class Members, and (iii) any tax consequence to Class member resulting from or arising out of the Settlement.

32.   "Releasing Parties" means, individually and collectively, Plaintiffs and all Class Members on behalf of themselves and any of their respective past, present, or future officers, directors, employees, shareholders (in their capacity as such), legal representatives, partners, associates, trustees, parents, subsidiaries, divisions, affiliates, heirs, executors, administrators, purchasers, predecessors, successors, assigns, and any other Person purporting to act on behalf of, or for the benefit of, or derivatively for any of them, regardless of whether such Person submits any claim for payment or receives any such payment pursuant to any claims process that may be established and approved by the Court. For avoidance of doubt, the term "Releasing Parties" includes (among others) every Class Member regardless of whether he, she, or it submits any claim for payment or receives any such payment pursuant to any claims process that may be established and approved by the Court.

33.   "Released Parties" means National Milk, all past and present members of Cooperatives Working Together, and all past and present members of National Milk, including the Third Party Beneficiaries, as well as all of their respective past and present, direct and indirect, parents, subsidiaries, joint ventures, and affiliates,

7

and all of their respective past and present, direct and indirect, parents, subsidiaries, affiliates, unincorporated entities, divisions, and groups; the predecessors, successors and assigns of any of the above; and each and all of the present and former principals, parents, officers, directors, supervisors, employees, members, agents, representatives, insures, attorneys, heirs, executors, administers, and assigns of each of the foregoing (collectively "Releasees").

34. "National Milk's Counsel" means Steptoe & Johnson LLP.

35.  "Settlement" means the settlement and related terms between the Settling Parties as set forth in this Agreement.

36. "Settlement Amount" means the sum of $220 million plus accrued interest as specified below.

37. "Settlement Fund" means the escrow account established pursuant to Section III of this Agreement, including all monies held therein in accordance with the terms of this Agreement.

38. "Settlement Agreement Execution Date" means the date on which this Agreement is executed by the Settlement Parties.

39. "Settlement Preliminary Approval Date" means the date of preliminary approval of the Settlement by the Court.

40. "Settling Parties" means Defendant National Milk and Plaintiffs.

41. "Summary Notice" means the summary notice of proposed settlement and hearing for publication acceptable to the Settling Parties and approved by the Court.

42.     "Taxes" has the meaning given to it in Section VIII.

43.     "Third Party Beneficiaries" means Agri-Mark, Inc., Dairy Farmers of America Inc., Land O'Lakes, Inc., all past and present members of Cooperatives Working Together, and all past and present members of National Milk.

## II.     AGREED-UPON RECITALS

1.     WHEREAS, on September 11, 2015, Plaintiffs filed their Third Amended Class Action Complaint against Defendants in the Action;

2.     WHEREAS, Plaintiffs allege that, from 2003 to 2010, Defendants violated Section 1 of the Sherman Act, 15  U.S.C. § 1, through the CWT program, in which Defendants engaged in a continuing contract, combination and conspiracy to limit the production of raw farm milk through premature "herd retirements" that required participating dairy farmers to destroy all of the dairy cows in all of their herds. Plaintiffs allege that the principal purpose and effect of this contract, combination and conspiracy was to reduce the nation's supply of raw milk and to produce both short-term and long-term increases in the prices of raw farm milk, butter and cheese.

3.     WHEREAS, Defendants have denied and continue to deny each and every Claim and allegation of wrongdoing made in the Action and all charges of wrongdoing or liability against them arising out of any Conduct alleged or that could have been alleged in the Action;

4.     WHEREAS, Class Counsel have conducted and overseen extensive discovery and investigation of the facts, including extensive expert discovery, and after carefully

considering the relevant circumstances of the Action and the applicable law have concluded that: (i) it is in the best interests of Plaintiffs and the Class to enter into this Agreement in order to avoid the uncertainties of continued litigation, and to assure that the benefits reflected herein, including the value of the Settlement Amount to be paid by National Milk under this Agreement, are obtained for the Class; and (ii) the settlement set forth in this Agreement is fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23 and in the best interests of the Class;

5.     WHEREAS, National Milk, while denying any liability for the claims asserted in the Action, and believing that Defendants have good defenses to those claims, but recognizing that continued litigation of the Action is likely to be expensive and time-consuming, has agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and thereby put fully to rest with finality this controversy by obtaining complete dismissal of the Action with prejudice and a release by the Class and each member thereof of all Released Claims;

6.     WHEREAS, this Agreement is the product of arms'-length negotiations between the Parties and this Agreement embodies all of the terms and conditions of the settlement agreed upon subject to the preliminary and final approval of the Court;

NOW, THEREFORE, it is agreed, by and among the Plaintiffs, by and through Co-Lead Class Counsel, and National Milk, by and through National Milk's Counsel, that, subject to the preliminary and final approval of the Settlement by the Court, the Action be settled,

compromised, and dismissed on the merits with prejudice as to National Milk and the other Released Parties, without costs, on the following terms and conditions.

### III.    THE SETTLEMENT FUND

1.    National Milk will cause to be deposited into an escrow or trust account at the Escrow Bank $220,000,000 as follows:

a.    Within ten (10) calendar days after the Settlement Preliminary Approval Date, National Milk will cause to be deposited into an escrow or trust account at an appropriate financial institution approved by the Court for the benefit of the Class ("Class Account") the sum of thirty million U.S. dollars ($30,000,000);

b.    Within ten (10) calendar days after the Deadline for Filing Appeal from Final Judgment and Order of Dismissal, but in no event before July 1, 2020, National Milk will cause to be deposited into the Class Account the sum of sixty million U.S. dollars ($60,000,000); provided that if an appeal is taken from the Court's Final Judgment and Order of Dismissal, then within ten (10) calendar days of the filing of such an appeal, but in no event before July 1, 2020, National Milk will cause to be deposited in a trust account at an appropriate financial institution approved by the Court for the benefit of the Class but with interest payable to National Milk, the sum of sixty million U.S. dollars ($60,000,000), such sums to be used to make the payment described in Paragraph III.1.b. if and when that payment is due;

c.    In the event that National Milk fails to make the initial $30,000,000 payment and/or the subsequent $60,000,000 payment referenced above when due to Plaintiffs, and such payments remain uncured for more than seven (7) business days after Plaintiffs provide written notice of any such failure to National Milk, then the Settlement is voidable at the election of the

Plaintiffs.  If Plaintiffs so elect by providing separate written notice to National Milk's Counsel, the Settlement (including but not limited to the Release) shall be null and void and any and all moneys previously paid pursuant to the Settlement shall be immediately returned to National Milk, minus any funds used for Court-approved notice and administrative expenses, and the case shall proceed in Court.

        d.    The remaining portion of the Settlement Amount shall be paid in four installments as follows:

- A 1st Installment Payment of $32.5 million plus Accrued Interest with such installment to be paid within ten (10) business days of December 31, 2020, or at least three (3) months after the payment to Class Account of the sixty million U.S. dollars ($60,000,000) pursuant to Paragraph III.1.b., whichever is later (but such payment does not include the deposit of funds into a trust account wherein interest is payable to National Milk as described in Paragraph III.1.b);

- A 2nd Installment Payment of $32.5 million plus Accrued Interest with such installment to be paid not later than one year from the date on which the 1st Installment Payment was due;

- A 3rd Installment Payment of $32.5 million plus Accrued Interest with such installment to be paid not later than two years from the date on which the 1st Installment Payment was due;

- A 4th Installment Payment of $32.5 million plus Accrued Interest with such installment to be paid not later than three years from the date on which the 1st Installment Payment was due.

As used in this sub-paragraph III.1.d the term "Accrued Interest" means interest on the balance of the unpaid Settlement Amount as of the date the payment is made to the Class Account pursuant to Paragraph III.1.b. at the rate of 4% per annum.

    e.  If this Agreement is not rescinded pursuant to Paragraph III.1.c., a failure to make any payment described above in sub-paragraph III.1.d. as an Installment Payment when due to

Plaintiffs that remains uncured more than seven (7) business days after Plaintiffs provide written notice of any such failure to National Milk, shall be considered to be a material breach of the terms of this Agreement and the entire portion of the Settlement Amount remaining unpaid at that time plus interest accrued thereon (the "Unpaid Balance") shall become immediately due and payable.

2.    Any or all of the payments comprising the Settlement Amount can be made in advance and without penalty, with interest due, if any, as accrued only to the date of the early payment. The Settlement Amount net of attorneys' fees, reimbursement of litigation expenses, incentive awards to the Plaintiffs, if any, costs of notice and settlement administration and other expenses, shall be distributed to the Class on a basis approved by the Court for which neither National Milk nor Third Party Beneficiaries shall have any responsibility.  There will be no reversion, unless the Court declines to enter Final Judgment and Order of Dismissal, in which case all funds not previously spent on administrative costs shall be returned to National Milk.

3.    In the event that National Milk elects to make deposits into the Settlement Fund by wire transfer, Co-Lead Class Counsel shall provide National Milk with information necessary to complete the wire transfer. The Settlement Fund shall be established as an escrow account at Escrow Bank and administered by the Escrow Agent, subject to approval by the Court.

4.    Plaintiffs propose the allocation be made as follows:  Thirty-seven percent (37%) of the Net Settlement Fund, shall be allocated for payment and distribution to the

13

Butter Sub-Class and sixty-three percent (63%) of the Net Settlement Fund, shall be allocated for payment and distribution to the Cheese Sub-Class in accordance with a Plan of Distribution to be approved by the Court.

5. Within ninety (90) days of the execution of this Agreement, National Milk shall obtain and furnish to Class Counsel for the benefit of the Class an irrevocable standby letter of credit from CoBank in which CoBank undertakes to pay Plaintiffs the lesser of $130,000,000 (inclusive of Accrued Interest) or the unpaid balance, upon written certification by Class Counsel that National Milk failed to make a payment when due to Plaintiffs and that failure remained uncured more than seven (7) days after Plaintiffs provided written notice of any such failure to Defendants. Should National Milk fail to supply the Class with such an irrevocable standby letter of credit within ninety (90) days of the execution of this Agreement, the Settlement (including but not limited to the Release) shall be null and void and any and all moneys previously paid pursuant to the Settlement shall be immediately returned to National Milk, minus any funds used for Court-approved notice and administrative expenses, and the case shall be set for trial.

6. Other than payment of the Settlement Amount in accordance with the provisions of Section III.1 above, neither National Milk nor the Third-Party Beneficiaries shall have any liability, responsibility, or obligation to pay or reimburse any other amounts to any Person, including but not limited to Plaintiffs, Class Counsel, any Class Member, or any Releasing Parties in connection with, relating to, or arising out of the Action, the Released Claims, or this Settlement. National Milk shall have

no liability, obligation, or responsibility with respect to the investment, allocation, use, disbursement, administration, or oversight of the Settlement Fund.

7.      The Settlement Fund shall be administered pursuant to this Agreement and subject to the Court's continuing supervision and control. With the sole exception of Notice and administration costs described in Section VII, and Taxes as described in Section VIII, no monies shall be disbursed from the Settlement Fund prior to the Effective Date of Settlement and without the specific authorization of the Court, except in the event of termination of this Agreement and return of the Settlement Fund to National Milk.

8.      The Settlement Fund shall be invested by the Escrow Agent in short term (up to ninety day maturity) United States agency or Treasury securities or other instruments backed by the full faith and credit of the United States government or an agency thereof, or fully insured by the United States government or an agency thereof, and the proceeds of these instruments shall be reinvested in similar instruments at their then-current market rates as they mature. In the event that the yield on securities identified herein is negative, in lieu of purchasing such securities, all or any portion of the Settlement Fund held may be deposited in a non-interest-bearing account, which to the extent available, is fully insured by the Federal Deposit Insurance Corporation.  All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this Section shall be borne by the Class.

9.  All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds are either returned to National Milk pursuant to this Agreement or distributed subsequent to the Effective Date of Settlement pursuant to a plan of distribution approved by the Court or pursuant to other orders of the Court.

10. If the Court declines to enter Final Judgment and Order of Dismissal, or if such approval is modified or set aside on appeal, and if subject to remand the Court declines to issue a further Final Judgment and Order of Dismissal, then this entire Agreement shall be null and void and the parties may elect to re-negotiate a settlement agreement or proceed to the conclusion of the underlying litigation.

## IV.   DISMISSALS, RELEASES, AND COVENANTS NOT TO SUE

1.  Subject to Court approvals, Settling Parties agree that this Agreement shall be in full and final disposition of: (i) the Action; and (ii) any and all Released Claims, as against any and all Released Parties.

2.  Upon final approval of the Settlement reflected in this Agreement, and as part of the entry of the Final Judgment and Order of Dismissal, the Action shall be dismissed with prejudice.

3.  The Releasing Parties hereby expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release the Released Parties from, any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, or otherwise in nature, for damages, restitution,

16

disgorgement, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, or other payment of money, or for injunctive, declaratory, or other equitable relief, whenever incurred, whether directly, indirectly, derivatively, or otherwise, whether known or unknown, suspected or unsuspected, in law or in equity, that any Releasing Party ever had, now has, or hereafter can, shall, or may have and that have accrued as of the Settlement Preliminary Approval Date related in any way to the Released Claims. In connection therewith, upon the Effective Date of Settlement, each of the Releasing Parties (i) shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties from the beginning of time through the Settlement Preliminary Approval Date; and (ii) agrees and covenants not to sue any of the Released Parties with respect to any Released Claims or to assist any third party in commencing or maintaining any suit against any Released Party related in any way to any Released Claims

4. The Settling Parties intend by this Agreement to settle with and release only the Released Parties that the Releasing Parties have released pursuant to Section IV.1-4, and the Settling Parties do not intend this Agreement, or any part hereof, or any other aspect of the proposed Settlement or release, to release or otherwise affect in any way any claims concerning product liability, breach of warranty, breach of contract or tort of any kind, a claim arising out of violation of the Uniform Commercial Code, or personal or bodily injury.

## V.   PRELIMINARY APPROVAL ORDER, NOTICE, AND FAIRNESS HEARING

17

1.      No later than December 6, 2019, Class Counsel shall submit to the Court a motion and supporting papers requesting entry of the Preliminary Approval Order, with Defendants' Counsel to be provided at least five (5) business days' advance notice of the proposed filings and drafts thereof. The requested Preliminary Approval Order shall include provisions to the following effect:

(i)      Approving the Settlement set forth in this Agreement as sufficiently fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23 for purposes of issuing Notice to the Class;

(ii)     Approving the form, contents, and method of dissemination, of: (1) the Summary Notice, which shall be (a) mailed via first-class domestic or international mail, as applicable; and (b) published in appropriate periodicals generally read by Class Members as determined by Class Counsel in consultation with the Claims Administrator; and (2) the Notice, which shall be mailed to Class Members that request a copy and posted on a dedicated website. The Preliminary Approval Order shall also direct Class Counsel to establish and maintain, or cause to be established and maintained, a dedicated website from which each member of the Class can view and download relevant documents, including the Preliminary Approval Order, Notice, Summary Notice, and Plaintiffs' Third Amended Consolidated Class Action Complaint;

(iii)    Approving the procedures set forth in the Notice for Persons who would otherwise be Class Members to object to the Settlement;

(iv)     Approving the appointment of Epiq Class Action & Claims Solutions, Inc.as Escrow Agent;

(v)      Setting a schedule for the filing of (a) Plaintiffs' motion for final settlement approval and proposed allocation plan, and (b) Class Counsel's application for attorneys' fees, costs, and incentive awards for the Named Plaintiffs; and

(vi)     Scheduling a final approval hearing with respect to the proposed Settlement for a time and date convenient for the Court, but no earlier than ninety (90) days after the Settlement Agreement Execution Date or sixty (60) days after the Settlement Preliminary Approval Date, whichever is later, at which hearing the Court will conduct an inquiry into the fairness, reasonableness, and adequacy of this Agreement and address any

18

objections to it, and determine whether this Agreement should be finally approved.

2.    Any Class Member who objects to the Settlement set forth in this Agreement may appear in person or through counsel, at that Person's own expense, at the Fairness Hearing to present any evidence or argument that the Court deems proper and relevant, subject to further order by the Court. However, no such Person shall be heard, and no papers, briefs, pleadings, or other documents submitted by any such Person shall be received and considered by the Court, unless such Person properly submits a written objection that includes: (i) a notice of intention to appear; and (ii) the specific grounds for the objection and any reasons why such Person desires to appear and be heard, as well as all documents or writings that such Person desires the Court to consider. Such a written objection must be both filed with the Court and mailed to Co-Lead Class Counsel and National Milk's Counsel not less than fourteen (14) days prior to the Fairness Hearing, or any other date set by the Court, in accordance with the procedures and deadlines set forth in the Notice. Any Person who fails to timely object in the manner prescribed herein shall be deemed to have waived his or her objections and will forever be barred from making any such objections in the Action, unless otherwise excused for good cause shown, as determined by the Court. Co-Lead Class Counsel and/or National Milk shall file any papers in response to any such objection or otherwise in further support of the Settlement within seven days of the Fairness Hearing, or any other date set by the Court.

19

3.      If the Preliminary Approval Order is entered by the Court, Class Counsel shall

seek entry of a Final Judgment and Order of Dismissal, with Defendants' Counsel

to be provided at least five (5) business days' advance notice of the proposed

filings and drafts thereof, that among other things:

(i)     Approves finally the Settlement set forth in this Agreement and its terms, which shall be incorporated by reference, as being a fair, reasonable, and adequate settlement as to Class Members within the meaning of Fed. R. Civ. P. 23 and directing its consummation according to its terms;

(ii)    Approves Co-Lead Class Counsel's proposed allocation plan for distribution of proceeds of the Settlement to Class Members;

(iii)   Finds that the Notice constitutes due, adequate, and sufficient notice of the Settlement set forth in this Agreement, meeting the requirements of due process and the Federal Rules of Civil Procedure;

(iv)    Directs that the Action shall be dismissed with prejudice without costs;

(v)     Directs that the releases of any and all Released Claims with respect to the Released Parties shall be deemed effective as of the Effective Date of Settlement;

(vi)    Orders that Releasing Parties are permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any Released Claims against any Released Party;

(vii)   Orders that rulings, orders, and judgments in this Action shall not have any res judicata, collateral estoppel, or offensive collateral estoppel effect with respect to any non-released claim;

(viii)  Retains with the Court exclusive jurisdiction over the Settlement and this Agreement, including the administration and consummation of the Settlement;

(ix)    Directs that the judgment of dismissal as to Defendants shall be final and entered forthwith; and

(x)     Expressly retains continuing and exclusive jurisdiction to interpret and enforce the terms of terms of the Settlement.

## VI.   APPLICATION FOR ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARDS

1.      Class Counsel will submit an application or applications (the "Fee and Expense Application") to the Court for an award of attorneys' fees and expenses and incentive awards, if any, to Plaintiffs pertaining to this Settlement or to this Action. Neither National Milk nor the Released Parties shall have any responsibility for, or liability whatsoever with respect to, any payment of attorneys' fees or expenses or incentive awards; rather, any such attorneys' fees, expenses, or incentive awards must be paid solely from the Settlement Fund. National Milk agrees not to state a position on Co-Lead Class Counsel's request for (i) attorneys' fees of up to 33.333% of the gross Settlement Amount (including any interest earned thereon as part of the Settlement Fund), (ii) reimbursement of all reasonably incurred expenses and/or future expenses to be expended in litigation on behalf of the Class, and (iii) incentive awards to the Named Plaintiffs.  Any attorneys' fees, costs and expenses awarded by the Court shall be disbursed only to Co-Lead Class Counsel for allocation, at their discretion, among the various Class Counsel who have participated in this litigation.

2.      Any Fee and Expense Application shall be considered by the Court separate and apart from its consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal of any order relating thereto or reversal or modification

thereof, shall not operate to terminate or cancel this Agreement or the Settlement, or affect the finality or binding nature of any of the releases granted hereunder.

## VII.   NOTICE AND ADMINISTRATIVE COSTS AND ADMINISTRATION OF THE SETTLEMENT

1.   Class Counsel shall take all necessary and appropriate steps to ensure that the Class Notice and notice of the date of the hearing scheduled by the Court to consider the fairness, adequacy, and reasonableness of this Settlement is provided in accordance with the Federal Rules of Civil Procedure and any Court orders. The Class Notice will be issued after Preliminary Approval by the Court and subject to any Court orders regarding the means of dissemination of notice.

2.   The Escrow Agent shall be entitled, upon approval of Co-Lead Class Counsel, to make disbursements from the Settlement Fund for purposes of paying costs (other than attorneys' fees) incurred in preparing and providing the Class Notice and paying other administrative expenses, including expenses of and incurred by the Claims Administrator. Funds expended pursuant to Section VII for Class Notice and claims administration are not recoverable (i.e., do not revert to Defendants) if this Settlement is terminated or does not become final.

3.   It is anticipated and understood that Co-Lead Class Counsel and Plaintiffs, after consultation with National Milk, will eventually seek to establish a claims process pertaining to this Settlement or this Action, subject to approval by the Court, pursuant to which Class Members may seek to be included in distributions of funds recovered on their behalf in the Action. Any such claims process shall include

required submission of a proof of claim form by each Class Member, which proof of claim form shall include, *inter alia*, an acknowledgement of, and agreement to, the releases of all Released Claims against all Released Parties. Any Class Member who does not execute a proof of claim form containing such an acknowledgement and agreement shall not be permitted to receive any distribution from the Settlement Fund or otherwise in connection with the Action and will in any event be barred from bringing any action against the Released Parties concerning the Released Claims.   During the claims process, claiming Class Members shall identify any high level executives of such Class Member, if any, who are willing to speak with high-level executives of the CWT cooperatives regarding the expansion of their supply relationship regarding butter and cheese, and the claims administrator shall make such information available to National Milk.   Nothing contained in the Agreement shall be deemed to require any Class Member to have discussions with or do any business with any particular seller of butter or cheese.

4.      Neither National Milk nor the Released Parties shall have any role in, or responsibility or liability to any person for, the solicitation, review, or evaluation of proofs of claim by Plaintiffs, Class Counsel, or their designated representatives or agents.

5.      Neither National Milk nor the Released Parties shall have any responsibility for, or liability whatsoever with respect to, any Notice and Administrative Costs, except to the extent that any such costs will be paid solely from the Settlement Fund.

6.    All Class Members whose claims are not approved and who may be barred from any participation in distributions from the Settlement Fund shall nonetheless be bound by all of the terms of this Agreement and the Settlement, including the terms of the Final Judgment and Order of Dismissal to be entered in the Action and the releases provided for herein, and will be barred from bringing any action against the Released Parties concerning the Released Claims.

7.    All proceedings with respect to the administration, processing, and determination of claims and proof of claims by Plaintiffs (including Class Members) and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court, and the Court shall retain continuing jurisdiction to interpret and enforce the terms of the Settlement.

## VIII.  TAXES

1.    The Settling Parties agree that the Settlement Fund is intended to be treated at all times as a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1, and agree not to take any position for Tax purposes inconsistent therewith. The Settlement Fund, less any amounts incurred for Taxes (as defined below), and less any funds expended for Class Notice and claims administration pursuant to Section VII, plus any accrued interest thereon, shall be returned to National Milk if the Settlement does not become effective for any reason, including by reason of a termination of this Agreement.

24

2.   The Escrow Agent and National Milk will cooperate and, if in the view of National Milk such an election is necessary or advisable, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of Section VIII including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permissible date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing(s) to occur.

3.   For the purpose of Section 1.468B of the Internal Revenue Code and the Treasury regulations thereunder, the Escrow Agent shall be designated as the "administrator" of the Settlement Fund. The Escrow Agent or the claims administration firm retained by Class Counsel and approved by the Court shall timely and properly file all income, informational, and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)). Such returns shall be consistent with this Section VIII and, in all events, shall reflect that all Taxes (as defined below) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

4.   All: (i) taxes or other similar imposts or charges (including any estimated taxes, interest, penalties, or additions to tax) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be

imposed upon the Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1 (or any relevant equivalent for state tax purposes); (ii) other taxes imposed on or in connection with the Settlement Fund (collectively, "Taxes"); and (iii) expenses and costs incurred in connection with the operation and implementation of Section VIII (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described herein ("Tax Expenses")), shall promptly be paid out of the Settlement Fund by the Escrow Agent without prior order from the Court. Taxes shall be treated as, and considered to be, a cost of administration of the Settlement Fund, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l) (2)). The Settling Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section.

5.    Neither the Settling Parties nor their counsel shall have any responsibility for or liability whatsoever with respect to: (i) any act, omission, or determination of the Escrow Agent or any other person, or any of their respective designees or agents,

in connection with the administration of the Settlement Fund or otherwise; (ii) any plan of distribution approved by the Court; (iii) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (iv) any losses suffered by, or fluctuations in the value of, the Settlement Fund; or (v) the payment or withholding of any Taxes and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

## IX.    NO ADMISSION OF LIABILITY

1.    Nothing in the existence of, or terms of, this Agreement constitutes an admission by National Milk and/or Third Party Beneficiaries as to the merits of any allegation made in the Action or the invalidity of any substantive defenses or procedural issues that could be or have been asserted by National Milk and Third Party Beneficiaries. For avoidance of doubt, National Milk and Third Party Beneficiaries expressly deny the allegations of each and every complaint in the Action and all liability.  The Agreement, and all negotiations, documents, and discussions associated with it, shall be without prejudice to the rights, positions, or privileges of any Released Party (except as expressly provided for in this Agreement), and shall not be construed as, or deemed to be, an admission or evidence on the part of any Released Party of any violation of any statute, regulation, law, rule, or principle of common law or equity, or of any liability or wrongdoing, or of the truth or merit of any allegations or claims in this Action, and shall not be discoverable, used, offered, or accepted, directly or indirectly, as

27

evidence of such in this Action or any other action, litigation, arbitration, or other proceeding, and shall have no precedential value; provided, however, that nothing contained herein shall preclude use of this Agreement in any proceeding to enforce this Agreement or the Final Judgment and Order of Dismissal.

2. Plaintiffs (including each Class Member), Class Counsel, and National Milk agree that neither this Agreement nor any statement made in negotiation thereof shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by National Milk and Third Party Beneficiaries or of the truth of any of the claims or allegations alleged in or relating to the Action.  If the Settlement does not result in the Final Judgment and Order of Dismissal, Defendants expressly reserve the right to assert any and all available defenses (including immunities under the Clayton Act, the Capper-Volstead Act, and any other privileges and immunities) in other actions and proceedings or in this proceeding and Plaintiffs expressly reserve the right to assert any and all available claims and respond in any way to any and all of the Defendants' defenses (including immunities under the Clayton Act, the Capper-Volstead Act, and any other privileges and immunities asserted by Defendants) in the same manner and to the same extent that they could have asserted such claims, defenses, immunities and responses thereto if this Agreement had never been entered into.

**X.    GOOD FAITH EFFORTS TO EFFECTUATE THIS AGREEMENT**

1.      The Settling Parties agree to cooperate with one another in good faith to effectuate and implement the terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the terms of this Agreement. This includes National Milk's timely serving notice on those entities required to receive notice pursuant to 28 U.S.C. § 1715.

## XI.   MISCELLANEOUS

1.      The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

2.      The Settling Parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's-length in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

3.      The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering all orders relating to matters addressed in this Agreement and enforcing the terms of this Agreement.

4.      For the purpose of construing or interpreting this Agreement, the Settling Parties agree that it is to be deemed to have been drafted equally by all Settling Parties hereto and shall not be construed strictly for or against any Settling Party.

5.      This Agreement shall constitute the entire, complete, and integrated agreement between the Settling Parties pertaining to the settlement of the Action and

29

supersedes any and all prior negotiations and agreements, and is not subject to any condition not explicitly provided for in this Agreement itself. All terms of this Agreement are contractual and not mere recitals. In entering into and executing this Agreement, each of the Settling Parties respectively warrants that it is acting upon its respective independent judgment and upon the advice of its respective counsel, and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Person, other than the warranties and representations expressly made in this Agreement. Subject to approval of the Court, the terms of this Agreement are and shall be binding upon each of the Settling Parties hereto, their heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, and upon all other Persons claiming any interest in the subject matter hereto through any of the Settling Parties hereto including any Class Members.

6.   The terms of this Agreement are not severable, but are interdependent and have been agreed to only as a whole by the Settling Parties.

7.   This Agreement may be modified or amended only by a writing executed by the Settling Parties, including their counsel, and approved by the Court.

8.   All terms of this Agreement shall be governed by and interpreted according to federal law.

9.   The waiver by any Settling Party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach of this Agreement, whether prior, subsequent, or contemporaneous.

30

10.    Each of the Released Parties is intended to be and is a third-party beneficiary of this Agreement and is authorized to enforce the provisions of this Agreement, including without limitation the release of Released Claims against the Released Parties and covenant not to sue the Released Parties, and such other provisions of this Agreement as are applicable to each Released Party.

11.    Each of the Third-Party Beneficiaries to this Agreement is entitled to the rights and benefits hereunder and may enforce the provisions hereof as if it were a party hereto.

12.    National Milk and Plaintiffs (including Class Members), and Class Counsel hereby irrevocably submit to the exclusive jurisdiction and venue of the United States District Court for the Southern District of Illinois, for any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein. Each Settling Party waives the right to move to dismiss or transfer any action brought in the United States District Court for the Southern District of Illinois to enforce this Agreement on grounds of jurisdiction, venue, or forum non conveniens.

13.    It is anticipated that Co-Lead Class Counsel and Plaintiffs will eventually submit to the Court a plan of distribution with respect to the distribution of some or all of the Settlement Fund at some time following the Effective Date of Settlement. Distribution payments will be made by check or electronic payment.  If complete exhaustion of settlement funds is not feasible for unanticipated reasons, it will be

distributed as *cy pres* to National FFA Organization, 6060 FFA Drive, Indianapolis, Indiana 46268-0960. A plan of distribution is not a term of this Agreement, and it is not a condition of this Agreement that any particular plan of distribution be approved. Any plan of distribution is a matter separate and apart from the settlement between the Settling Parties and any decision by the Court concerning a plan of distribution shall not affect the validity or finality of the proposed settlement. National Milk shall have no responsibility, obligations, or liabilities whatsoever with respect to any plan of distribution or implementation thereof, or with respect to any other administration or distribution of the Settlement Fund.

14.    The Named Plaintiffs and Defendants will return or destroy all copies of confidential and highly confidential materials obtained in this litigation from any other party to the Action or third parties, including Dr. Scott Brown, within thirty (30) days of final approval of the Settlement and exhaustion of any appeals.

15.    The Final Agreement is subject to approval by the Board of Directors of National Milk or its duly authorized delegates, not to be unreasonably withheld, and to be approved on or before November 22, 2019.

16.    This Agreement may be executed in counterparts by or on behalf of the Settling Parties, and a facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Agreement.

17.    Plaintiffs and National Milk acknowledge that they have been represented by counsel and have made their own investigations of the matters covered by this

32

Agreement to the extent they have deemed it necessary to do so. Therefore, Plaintiffs and National Milk and their respective counsel agree that they will not seek to set aside any part of this Agreement on the grounds of mistake or coercion. Moreover, Plaintiffs and National Milk and their respective counsel understand, agree, and expressly assume the risk that any fact may turn out hereinafter to be other than, different from or contrary to the facts now known to them or believed by them to be true, and further agree that this Agreement shall be effective in all respects notwithstanding and shall not be subject to termination, modification, or rescission by reason of any such difference in facts.

18.    Any notice or materials to be provided to the Plaintiffs or Co-Lead Class Counsel pursuant to or relating to this Agreement shall be sent to Michael L. Roberts, Roberts Law Firm P.A., 20 Rahling Circle, Little Rock, AR 72223; Don Barrett, Barrett Law Group, P.A., 404 Court Square North, Lexington, Mississippi 39095-0927; and Dianne M. Nast, NastLaw, LLC, 1101 Market Street, Suite 2801, Philadelphia, PA 19107; any notice or materials to be provided to National Milk's Counsel pursuant to or relating to this Agreement shall be sent to Jonathan B. Sallet, Steptoe & Johnson, LLP, 1330 Connecticut Avenue, NW, Washington, DC 20036.

19.    Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval, and the undersigned Co-Lead Class Counsel represent that they

33

are authorized to execute this Agreement on behalf of Plaintiffs and, subject to Court Approval, on behalf of the Class and all Class Members.

**APPROVED**

BY:_____
      Jonathan B. Sallet, Counsel for
      National Milk Producers Federation


BY:_____
      Michael L. Roberts, Co-Lead Class Counsel


BY:_____
      Don Barrett, Co-Lead Class Counsel


BY:_____
      Dianne Nast, Co-Lead Class Counsel

35

BY:_____  4/30/19
     Jonathan B. Sallet, Counsel for
     National Milk Producers Federation


BY:_____
     Michael L. Roberts, Co-Lead Class Counsel


BY:_____
     Don Barrett, Co-Lead Class Counsel


BY:_____
     Dianne Nast, Co-Lead Class Counsel